J-S23014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WILLIAM R. BERKE, III | |
| Appellant | No. 13 MDA 2022 |

Appeal from the PCRA Order Entered December 1, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No: CP-36-CR-0003835-2019

BEFORE:  STABILE, McLAUGHLIN, and COLINS,[*] JJ.

MEMORANDUM BY STABILE, J.:                     **FILED OCTOBER 17, 2022**

Appellant, William R. Berke, III, appeals from the December 1, 2021 order denying his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-42.  We affirm.

The record reveals that, on May 21, 2019, the Commonwealth charged Appellant with unlawful possession of a firearm (18 Pa.C.S.A. § 6105), possession of a firearm with an obliterated mark of identification (18 Pa.C.S.A. § 6117(a), and possession of drug paraphernalia (35 Pa.C.S.A. § 780-113(a)(32).  Appellant failed to appear for his scheduled jury trial on Thursday, January 23, 2020.  Defense counsel informed the trial court that Appellant had been present at the call of the criminal trial list the previous

---

[*] Retired Senior Judge assigned to the Superior Court.

Friday, and that Appellant was aware of the scheduled date for his trial. Defense counsel attempted to contact Appellant several times during the week of trial without success. Defense counsel told the trial court he did not believe Appellant's absence was unintentional, and the court tried him in *absentia.*

The trial court's opinion recites the following pertinent facts from trial:

Testimony at trial by Detective Jesse Blank ("Blank") established that [Appellant] was a resident of 471 Manor Street, Apartment 1, in Lancaster City, where police officers executed a search warrant on May 15, 2019. Blank testified that the Manor Street address was listed as [Appellant's] address with the Pennsylvania Department of Transportation and on [Appellant's] vehicle registration. No one was present when the warrant was executed. During the search, Blank found mail in the vestibule and kitchen area that was addressed to [Appellant] at 471 Manor Street, Apartment 1. Another officer located five types of identification for [Appellant] in the basement of the apartment. Officers did not find identification or mail addressed to any another [sic] individual at 471 Manor Street, Apartment 1.

Detective Jeffrey Krause ("Krause") testified that he found a firearm and ammunition in a dresser in the master bedroom of the apartment. Krause identified photographs he took inside the apartment which depicted the master bedroom, the dresser in that bedroom, the top left-hand drawer of that dresser where the firearm (a revolver) was found, various items on the dresser, a dresser drawer containing a form of identification with [Appellant's] name on it, and ammunition found in the middle drawer of the dresser. The serial number on the firearm was obliterated. Ammunition and a speed-loader with ammunition that fit the revolver were found in an ammunition box on the floor beside the bed.

The Commonwealth established by stipulation that the firearm was functional and capable of expelling a projectile by the action of an explosive. Furthermore, [Appellant] was prohibited by law from possessing a firearm based on his prior convictions for burglary. After the Commonwealth rested, the defense presented no witnesses.

Trial Court Opinion, 2/17/22, at 2-3 (record citations omitted).

The trial court sentenced Appellant *in absentia* on April 22, 2020, after he failed to appear for his sentencing proceeding. The trial court imposed 4½ to 10 years of incarceration. Appellant did not file a post-sentence motion or a direct appeal. On May 17, 2021, Appellant filed a counseled PCRA petition alleging a violation of his constitutional due process rights in that the Commonwealth acted in bad faith in failing to preserve exculpatory evidence. The petition also alleged multiple instances of trial counsel's ineffectiveness. The PCRA court conducted a hearing on September 9, 2021 and denied all relief in the December 1, 2021 order presently on appeal.

Appellant raises eight assertions of error:

I.    Did the PCRA court err as a matter of law or abuse its discretion in denying [Appellant's] claim that his Due Process rights were violated by the Commonwealth's failure to preserve evidence that multiple other people occupied the residence?

II.   Did the PCRA court err as a matter of law or abuse its discretion in denying [Appellant's] claim that trial counsel was ineffective for failure to investigate the case, including a failure to interview potential witnesses, and failure to present a defense?

III.  Did the PCRA court err as a matter of law or abuse its discretion in denying [Appellant's] claim that trial counsel was ineffective for failure to request pretrial DNA testing of the firearm at issue where the prosecution was based on constructive possession and where [Appellant]—whose assertions were corroborated by multiple potential witnesses—declared his innocence and a desire to take his case to trial?

IV.     Did the PCRA court err as a matter of law or abuse its discretion in denying [Appellant's] claim that trial counsel was ineffective for failure to object to the Commonwealth's motion in *limine* to permit irrelevant testimony on obliterated serial numbers which was then used by the Commonwealth to make a propensity argument to the jury?

V.      Did the PCRA court err as a matter of law or abuse its discretion in denying [Appellant's] claim that trial counsel was ineffective for failure to object to irrelevant expert testimony regarding touch DNA elicited by the Commonwealth on direct examination?

VI.     Did the PCRA court err as a matter of law or abuse its discretion in denying [Appellant's] claim that trial counsel was ineffective for effectively waiving—by failing to argue on behalf of his client—closing argument?

VII.    Did the PCRA court err as a matter of law or abused its discretion in denying [Appellant's] claim that trial counsel was ineffective for failure to object to the Commonwealth's closing argument?

VIII.   Did the PCRA court err as a matter of law or abuse its discretion in denying [Appellant's] claim that trial counsel was ineffective for effectively abandoning his client?

Appellant's Brief at 4-6.

We conduct our review as follows:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

**Commonwealth v. Reyes-Rodriguez**, 111 A.3d 775, 779 (Pa. Super. 2015)

(*en banc*), **appeal denied**, 123 A.3d 331 (Pa. 2015).

With his first assertion of error, Appellant claims the Commonwealth violated his Due Process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, § 9 of the Pennsylvania Constitution.  The PCRA provides relief for "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."  42 Pa.C.S.A. § 9543(a)(2)(i).  Appellant relies on **Arizona v. Youngblood**, 488 U.S. 51 (1988), in which the Supreme Court held that due process is violated where law enforcement engages in a bad faith failure to preserve evidence potentially useful to the defendant.

No such failure occurred in this case.  Appellant's claim relies on police photographs depicting mail and other items not seized by police and entered into evidence.  Appellant argues that these items may have been addressed to and/or identified other persons whom Appellant claimed shared the apartment with him.  The presence of these items, Appellant argues, would have undermined the Commonwealth's case that he was in constructive possession of the firearm.

As noted above, however, police retrieved an unofficial badge with Appellant's name on it in the same master bedroom dresser in which they found the firearm.  They found mail addressed to Appellant and forms of identification for Appellant throughout the one-bedroom apartment.

Moreover, Appellant does not argue that police retrieved and then destroyed the potentially exculpatory items depicted in the photographs. Rather, those remained in Appellant's apartment and within his control. Yet he never identified those items or provided them to defense counsel for use at trial. Finally, the jury was aware of surveillance evidence indicating that persons other than Appellant were seen entering and exiting the apartment, and the jury was aware that the basement of the apartment showed signs of occupancy. Defense counsel examined Commonwealth witnesses on items depicted in photographs but not produced at trial. For these reasons, Appellant's argument fails.

Appellant's remaining arguments assert trial counsel's ineffectiveness. To prevail on these claims, Appellant need to plead in his petition and prove each of the following: (1) the underlying issue is of arguable merit; (2) that counsel had no reasonable strategic basis in support of the disputed action or inaction; and (3) counsel's failure prejudiced Appellant, such that the outcome of the proceeding would have been different but for counsel's failure. *Reyes-Rodriguez*, 111 A.3d at 780.

In his second assertion of error, Appellant argues counsel was ineffective for failing to conduct an adequate investigation and present witnesses who would have testified that Appellant shared his apartment with several others. To establish counsel's ineffectiveness for failing to call a witness, Appellant must prove

(1) that the witness existed; (2) that the witness was available; (3) that counsel was informed of the existence of the witness or should have known of the witness's existence; (4) that the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) that the absence of the testimony prejudiced appellant.

*Commonwealth v. Michaud*, 70 A.3d 862, 868 (Pa. Super. 2013).

For the reasons explained on pages 10 to 13 of the trial court's February 17, 2022 opinion, this issue lacks merit with respect to potential witnesses Martha Ayala, Megan Keller, and Anthony Ford.

Concerning potential witness Martha Ayala, the record reflects that Appellant provided counsel a notarized statement from her wherein she explained that she saw someone other than Appellant handling the gun, but never saw Appellant handle it. The PCRA court found credible counsel's testimony that Ayala failed to respond to repeated attempts to contact her. N.T. PCRA Hearing, 9/9/21, at 60-61. Thus, Appellant has failed to establish that Ayala was prepared to cooperate.

As to Megan Keller, who allegedly would have testified that someone other than Appellant was the primary occupant of the upstairs bedroom, the PCRA court found credible counsel's testimony that, prior to trial, Appellant directed counsel to have no contact with Keller due to an apparent falling out between the two. *Id.* at 60. Thus, Appellant has failed to establish that Keller would have testified on his behalf.

Another potential witness, Anthony Ford, failed to appear at the PCRA hearing. Thus, there is no record basis for concluding that he was available to testify or at trial or what his testimony would have been.

Finally, we consider Victoria Thomas, Appellant's mother. Thomas would have testified that Appellant moved into the apartment to take care of a friend, but the friend was no longer living there as of the execution of the search warrant in May of 2019. Appellant fails to explain how the absence of this testimony prejudiced him. Thomas also would have testified that she sent a notarized statement from Ayala to defense counsel prior to trial. As the PCRA court explains in its opinion, however, defense counsel testified credibly at the PCRA hearing that Ayala never responded to counsel's repeated attempts to contact her prior to trial.

Thomas allegedly would have testified that defense counsel had only one meeting with Appellant, for approximately 20 minutes, prior to trial. The PCRA court, however, credited counsel's testimony that Appellant persistently failed to cooperate with counsel prior to trial; he showed up to their meeting one hour and forty-five minutes late, and walked out shortly after the meeting began. Appellant has failed to establish that the absence of Thomas's testimony was prejudicial to him. Appellant's second assertion of error fails.

Appellant's third assertion of error—that counsel was ineffective for failing to seek DNA testing of swabs of the firearm—also fails. As the PCRA court explained, counsel testified at the PCRA hearing that he was concerned

that a positive result would be fatal to Appellant's defense. PCRA Court Opinion, 2/17/22, at 14-15; N.T. PCRA Hearing, 9/9/21, at 69. Counsel was aware of evidence that Appellant, though not charged with any drug offenses in this matter, sold drugs out of the apartment. This, in addition to male clothing in the bedroom, Appellant's identification badge in the dresser drawer, and the absence of evidence linking a female to bedroom (the witnesses identified above would have linked the gun to a woman), support counsel's strategic basis for declining to test for the presence of DNA on the gun swabs. Further, counsel had no basis, other than pure speculation, for believing that DNA other than Appellant's would be found on the gun. In *Commonwealth v. Collins*, 888 A.2d 564 (Pa. 2005), our Supreme Court held that counsel was not ineffective for failing to request fingerprint evidence where the petitioner had no evidence that the evidence would be exculpatory. For these reasons, we agree with the PCRA court's conclusion that counsel had a reasonable strategic basis in support of his inaction. Furthermore, we conclude that, because Appellant's argument for DNA testing is based purely on speculation, Appellant has failed to prove by a preponderance of the evidence that counsel's inaction was prejudicial.

Next, Appellant claims trial counsel was ineffective for failing to object to the Commonwealth's motion *in limine* to introduce evidence of the obliterated serial number on the firearm. The Commonwealth's theory was that a firearm with an obliterated serial number is much more likely to be in

the possession of someone who is prohibited from lawfully owning a firearm. Presently, Appellant argues that the presence of an obliterated serial number was irrelevant to the only contested issue at trial—Appellant's constructive possession of the gun. As the PCRA court explained, however, defense counsel objected and the trial court admitted the testimony over defense counsel's objection. PCRA Opinion, 2/17/22, at 15-16; N.T. Trial, 1/23/20, at 11. Counsel therefore cannot be deemed ineffective on this basis, and Appellant did not file a direct appeal to challenge the trial court's decision.

Appellant's fifth argument is that trial counsel was ineffective for failing to object to irrelevant testimony from a testifying police officer. Appellant claims defense counsel should have objected when the prosecutor elicited "touch DNA" testimony from its expert—the expert testified that it is not common to find DNA evidence on firearms. The Commonwealth did not want the jury to infer, from the lack of DNA testing on the firearm involved in this case, that the Commonwealth feared the result would have helped exonerate Appellant. Appellant argues that such an inference was justifiable and permissible, and that defense counsel should have objected to the testimony and argued to the jury that the absence of DNA evidence indicated that the Commonwealth could not prove that Appellant possessed the gun.

As the PCRA court noted, counsel cannot be deemed ineffective for failing to object to relevant evidence. **Commonwealth v. Thomas**, 744 A.2d 713, 716 (Pa. 2000). And the police detective's testimony about the decision

not to test the gun for DNA was relevant to explain the absence of DNA did not preclude the possibility that Appellant handled the gun. Further, as we have already explained, defense counsel had valid reasons for concluding that DNA testing of the firearm would have been at best unhelpful, and possibly very harmful, to the defense.

Next, Appellant claims defense counsel was ineffective for "effectively waiving closing argument," by which Appellant means that counsel's closing argument was too short and failed to highlight what Appellant believes were weaknesses in the Commonwealth's case. The record reveals that defense counsel simply highlighted that Appellant was not present when the search warrant was executed, and that Commonwealth photos depicted unidentified items of mail on the dresser where the gun was found. If any had been addressed to someone other than Appellant, counsel argued, then someone other than Appellant had access to the dresser. N.T. Trial, 1/23/20, at 134. In essence, counsel argued that the Commonwealth conducted a sloppy investigation and deliberately overlooked evidence that would have been harmful to its case against Appellant.

While counsel's argument was short, covering just over one page of transcript, we cannot conclude that a longer or more thorough closing argument would have altered the outcome of the case. As noted above, any and all items of mail that police did not remove during their investigation remained within Appellant's control. The Commonwealth recovered an ID

- 11 -

badge with Appellant's name on it from a drawer in the same dresser where the gun was found. Mail addressed to Appellant and other forms of identification for Appellant were found throughout the apartment. The dresser was in the bedroom of a one-bedroom apartment, and the apartment was Appellant's address of record according to Pennsylvania Department of Transportation records. The witnesses Appellant claims would have testified that someone other than Appellant had access to the bedroom did not cooperate with defense counsel prior to trial. Appellant has failed to establish that defense counsel's short closing argument prejudiced his case.

Appellant's seventh argument is that defense counsel was ineffective for failing to object to the Commonwealth's closing argument. Appellant notes that the Commonwealth argued that the dresser where the gun was found "amongst a bunch of [Appellant's] stuff," (N.T. Trial, 1/23/21, at 142) when in reality the only thing in the dresser positively tied to Appellant was an ID badge with his name on it. Appellant relies on **Commonwealth v. Correa**, 664 A.2d 607 (Pa. Super. 1995), wherein this Court concluded that counsel was ineffective for failing to object to a prosecutor's closing remarks. The **Correa** Court explained the applicable law:

> In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made. Generally, comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict. The

initial determination whether the prosecutor's remarks were unfairly prejudicial rests within the sound discretion of the trial court and our inquiry of necessity must turn to whether an abuse of discretion was committed.

*Id.* at 609. In *Correa*, a rape prosecution, the prosecutor referenced a notorious murder in "Detroit or New York" that happened in view of others who did not come to the victim's aid, apparently implying that the jury would be committing a similar failure if they did not come to the victim's aid by convicting the defendant. *Id.* at 628-29. We deemed the prosecutor's conduct a "wholly improper appeal to the emotions of the jury to right that wrong by coming to the aid of the victim in this case." *Id.*

The instant case is different. The Commonwealth produced a substantial body of evidence indicating that the one-bedroom apartment was Appellant's. An ID badge of his was in the bedroom dresser where the gun was found. Multiple other items identifying Appellant as the occupant of the apartment were found throughout. We cannot conclude that the prosecutor's statement was calculated to form a fixed bias and hostility toward Appellant, nor can we conclude that any objection thereto would have changed the outcome of the trial. Thus, Appellant has failed to establish prejudice.

Appellant also argues that defense counsel should have objected when the prosecutor argued that a firearm with an obliterated serial number was more likely to be in the possession of a person who was not allowed to possess a gun (the parties stipulated that Appellant was forbidden to posses a gun).

As noted above, Appellant objected unsuccessfully during trial. Appellant's seventh argument lacks merit.

Finally, Appellant argues that counsel was ineffective in that he simply abandoned his client. Appellant claims counsel threatened to stop representing him if he proceeded to trial in this matter, and that counsel's threats prompted Appellant not to appear at trial. As noted above, defense counsel testified to Appellant's lack of cooperation during preparation for trial, and the PCRA court found him credible.

Appellant also claims, in connection with his abandonment argument, that the cumulative effect of counsel's ineffectiveness warrants a new trial. Because we have concluded that Appellant has failed to establish any instance in which trial counsel was constitutionally ineffective, we reject this argument.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/17/2022

- 14 -